**Kristopher H. HOFFERTH,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 37A03–0601–CR–44.**

Court of Appeals of Indiana.

Nov. 8, 2006.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Kristopher H. Hofferth (Hofferth) appeals his conviction for Count I, dealing in methamphetamine, a Class B felony, Ind.Code § 35–48–4–1(a)(1); Count II, possession of methamphetamine, a Class D felony, I.C. § 35–48–4–6(a); Count III, possession of chemical reagents or precursors with intent to manufacture, a Class D felony, I.C. § 35–48–4–

14.5(e); and Count IV, driving while suspended, a Class A misdemeanor, I.C. § 9–24–19–2.

We reverse, vacate, and remand.

### ISSUE

Hofferth raises four issues on appeal, only one of which we find dispositive and which we restate as: Whether Hofferth was denied his Sixth Amendment right to counsel.

### FACTS AND PROCEDURAL HISTORY

On October 13, 2004, Officers from the Jasper County Sheriff's Department, DeMotte Police Department, and Wheatfield Police Department gathered to execute a search warrant issued to collect evidence of methamphetamine manufacturing at Janina Dowell's (Dowell) residence.[1] During the search, Hofferth arrived at Dowell's residence aggressively turning in to the driveway, thereby attracting the attention of Officer David Hickman (Officer Hickman). Officer Hickman stopped the vehicle and ordered Hofferth out of the car. After confirming Hofferth's identity and learning his driving privileges had been suspended, per department policy an inventory search of his vehicle was conducted.

Inside Hofferth's vehicle a powdery substance, later determined to be methamphetamine, was found. The officers obtained a warrant to search the vehicle further and found a box containing multiple lithium batteries, camping fuel, a box of kosher salt, and some clear liquid in a jug with a residue at the bottom, which was later identified as methamphetamine.

On October 15, 2004, the State filed an Information charging Hofferth with Count I, dealing in methamphetamine, a Class B felony, I.C. § 35–48–4–1(a)(1); Count II, possession of methamphetamine, a Class D felony, I.C. § 35–48–4–6(a); Count III, possession of chemical reagents or precursors with intent to manufacture, a Class D felony, I.C. § 35–48–4–14.5(e); and Count IV, driving while suspended, a Class A misdemeanor, I.C. § 9–24–19–2. On October 20, 2004, at Hofferth's initial hearing, the trial court appointed a public defender to assist him in presenting his defense. Trial by jury was set for October 18, 2005.

On September 27, 2005, Hofferth's counsel's Motion to Withdraw Appearance was granted. During this hearing, Hofferth asked for "a little more time to obtain an attorney . . . ." (Transcript, Vol. VI p. 4). There were no other hearings before the jury trial on October 18, 2005.

The day of trial Hofferth appeared without an attorney. Before proceeding with the trial, Hofferth asked for a continuance because he was "in the process of obtaining a lawyer." (Tr., Vol. VII p. 2). He added, "I can't do this by myself, I don't think." (Tr., Vol. VII p. 2). The trial court denied Hofferth's request for a continuance, but allowed him time to discuss with the State a possible plea agreement. After discussing with the State and the trial court the implications of the plea agreement, the following dialogue transpired:

> [HOFFERTH]: I[-] I don't know what to say, Your Honor.
>
> [TRIAL COURT]: Well[,] I do. We have a jury waiting to go. We'll proceed with the trial.
>
> [HOFFERTH]: Well, I can't do this by myself. I[-] I mean . . .

---

1. Appellant refers to Dowell as McDowell in his brief; however, Dowell appears in the transcript. We will refer to her as Dowell.

[TRIAL COURT]: Well, the day of the trial is not the time to raise those issues.

[HOFFERTH]: I know that, Your Honor. Like I said, I'm in the process[,] I just got enough money up for this lawyer. I'd rather have some legal help.

[TRIAL COURT]: Well, you should have done something before now.

[HOFFERTH]: I've been trying to. I've been in the process of it.

[TRIAL COURT]: What did you think was gonna happen today? At the last hearing, I set it for trial and said there would be no more continuances.[2] So[,] if it's not your intent to enter a plea, then we'll proceed with the trial. Go ahead and be seated.

(Tr. Vol. VII pp. 4–5).

The trial court proceeded to instruct the parties on the ground rules for jury selection. The trial court asked if there were any questions to which Hofferth replied, "Your Honor, I can't do this by myself." (Tr. Vol. VII p. 6). The trial court retorted, "Well, it's gonna happen." (Tr. Vol. VII p. 6). Jury selection proceeded, but Hofferth asked no questions of the prospective jurors stating, "I don't know what to say to 'em." (Tr. Vol. VII p. 18). After the jury was selected and taken to the jury room, the trial court's preliminary jury instructions were given to the parties. A short recess was taken from which Hofferth never returned. The trial continued without him. Hofferth was found guilty on all four counts.

On December 21, 2005, a sentencing hearing was held. Hofferth appeared without an attorney. When asked if there were any additions, deletions, or corrections that needed to be made to the pre-

sentence report Hofferth told the trial court:

Umm, it says I was *pro se,* and I asked for a lawyer. I didn't want to go *pro se,* by myself, during the trial. I asked the [trial court] three or four times if I can get a lawyer and I was denied. And I'd like to have a lawyer right now, during sentencing.

(Tr. Vol. VIII p. 3). The trial court replied:

Well, I'm going to proceed with the sentencing hearing and then I'll address your request for an attorney to take an appeal. That's not an addition to the presentence report. That's just factual matters in the presentence report.

(Tr. Vol. VIII p. 3).

Again, when Hofferth was asked whether he wanted to present any evidence or make any recommendations to the trial court, he replied:

Yeah, I asked for an attorney and I was denied. I don't see how I could go to trial without an attorney ... I mean, it's already happened, but [-] I just [-] I don't understand it. Why was I denied a lawyer?

(Tr. Vol. VIII p. 4).

Then, when the trial court asked Hofferth if he was ready to be sentenced, the following conversation took place:

[HOFFERTH]: No, sir. I wish to have an attorney present during sentencing.

[TRIAL COURT]: Do you have any legal reason to give why the [trial court] should not now pronounce sentence upon you?

2. The jury trial was not set at the "last hearing," but rather it was set at the hearing on September 12, 2005. (Tr. Vol. VII p. 5). At the hearing immediately preceding the jury trial, on September 27, 2005, Hofferth's coun-

sel was permitted to withdraw. Our review of the record before this court reveals that at no point did the trial court indicate there would be no more continuances.

[HOFFERTH]: I fail to [-] I can't argue sentencing by myself. I don't understand what's going on. I mean, I understand to an extent, but for the most part, I don't.

(Tr. Vol. VIII p. 5).

The trial court proceeded to sentence Hofferth to fourteen years for Count I, dealing in methamphetamine; three years for Count II, possession of methamphetamine; three years for Count III, possession of chemical reagents or precursors with intent to manufacture; and one year for Count IV, driving while suspended; all sentences to run concurrent.

Hofferth now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

█ Hofferth contends that he did not knowingly and intelligently waive his right to counsel. Specifically, Hofferth argues that the trial court never inquired into his decision to proceed *pro se,* because it was never his decision to proceed without counsel. The State concedes. We agree.

█ The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. *Jones v. State,* 783 N.E.2d 1132, 1138 (Ind. 2003). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Because the "average defendant does not have the professional legal skills to protect himself" at trial, a defendant's choice to appear without counsel must be made voluntarily. *Johnson v. Zerbst,* 304 U.S. 458, 462–63, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Moreover, trial courts should "at a minimum reasonably inform defendants who proceed without counsel of the dangers and disadvantages" of so doing. *Poynter v. State,* 749 N.E.2d 1122, 1128 (Ind.2001). We review *de novo* whether a defendant voluntarily chose self-representation, and whether that decision was made knowingly and intelligently. *Id.* at 1128–29.

The record before us does not indicate the trial court ever tried to determine if Hofferth had the resources to hire an attorney. Rather, it is clear Hofferth had financial difficulties and could not retain and compensate counsel within the trial court's arbitrary timeline. It may be possible that a defendant possessed of ample financial wherewithal could waive his right to hire private counsel by not promptly, or timely, acting on the right. However, in such an instance the trial court record should clearly reflect the constructive waiver and it should reflect a knowing and intelligent waiver made in open court.

At no time did Hofferth indicate he wished to represent himself. Rather, he repeatedly indicated to the trial court that he did not have the requisite skills necessary to effectuate his own defense, and that he desired to be represented by counsel. Consequently, it is clear from the record before us that the trial court blatantly ignored Hofferth's right to counsel. There is no hint in the record that the slightest effort was made to protect one of the most precious rights an accused possesses. This court has no other alternative than to reverse the conviction and remand this cause for a new trial, a trial in which Hofferth's right to counsel is the subject of greater concern and less disdain.

## CONCLUSION

Based on the foregoing, we find Hofferth was denied his Sixth Amendment right to counsel.

We reverse, vacate, and remand to the trial court.

BAILEY, J., and MAY, J., concur.